1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9   DORIS J. MARLOW,

10          Plaintiff,                    No. CIV S-04-1778 GGH

11      vs.

12
    JO ANNE B. BARNHART,            ORDER
13  Commissioner of
    Social Security,
14
            Defendant.
15  _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17  Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

18  under Title XVI of the Social Security Act ("Act").[1]  For the reasons that follow, plaintiff's

19  Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for

20  Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the

21  Commissioner.

22  BACKGROUND

23          Plaintiff, born November 14, 1938, applied on December 21, 2001 for disability

24  benefits.  (Tr. at 109, 28.)  Plaintiff alleged she was unable to work due to right arm pain and

25  _____

26      [1]  The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed
    before a magistrate judge).

1

immobility, and pain in her feet.  (Tr. at 109, 129, 135.)

In a decision dated June 6, 2003, ALJ Jacqueline Drucker determined plaintiff was not disabled.  The ALJ made the following findings:[2]

> 1.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2.  The claimant has no impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
>
> 3.  The claimant has no impairment that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4.  I find that the claimant's allegations regarding her limitations are not credible.

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  _____
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
     The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.   I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).

6.   Giving the claimant every benefit of the doubt, I find that she has the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk 6 hours in an 8-hour workday with normal breaks; and sit 6 hours in an 8-hour workday with normal breaks.

7.   The claimant's past relevant work as an outside salesperson and general clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965).

8.   The claimant is not medically precluded from performing her past relevant work.

9.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(c) and (e)).

(Tr. at 32.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Failed in Finding that Plaintiff did not Suffer From a Severe Medically Determinable Impairment; and B.  Whether the ALJ Erred in Finding Plaintiff Capable of Performing Past Relevant Work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

1   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

2   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

3   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

4   ANALYSIS

5              A.   Whether the ALJ Erred in Failing to Find That Plaintiff Suffered From Any

6   Severe Impairments

7              Plaintiff first contends that in considering her impairments at step two, the ALJ

8   did not consider plaintiff's prior fracture in her right shoulder, reduced grip strength in the right

9   hand, and degenerative disc disease of the spine, to be severe impairments.

10             An impairment is not severe only if it "would have no more than a minimal effect

11  on an individual's ability to work, even if the individual's age, education, or work experience

12  were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants

13  whose medical impairment is so slight that it is unlikely they would be disabled even if age,

14  education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct.

15  2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless

16  claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Nor does the allegation of

17  symptoms alone, whether credible or not, suffice to establish a severe impairment:

18             To qualify for benefits, Ukolov must be disabled. 42 U.S.C. §§
               423(a)(1)(E), 1382(a)(1). The Social Security Act defines

19             "disability" as the "inability to engage in any substantial gainful
               activity by reason of any medically determinable physical or mental

20             impairment which can be expected to result in death or which has
               lasted or can be expected to last for a continuous period of not less

21             than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added); see
               also 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental

22             impairment" is one that "results from anatomical, physiological, or
               psychological abnormalities which are demonstrable by medically

23             acceptable clinical and laboratory diagnostic techniques." 42
               U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added).

24
               In Social Security Ruling (SSR) 96-4p, the SSA explained what is

25             needed under SSA regulations to show a medically determinable
               impairment. SSR 96- 4p, 1996 WL 374187 (July 2, 1996). [FN2

26             omitted] The ruling clarified that "[a]lthough the regulations

provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone." Id. at *1 (footnote omitted); see also 20 C.F.R. §§ 404.1508, 416.908. The ruling noted the distinction between symptoms and signs: "symptoms ... are an individual's own perception or description of the impact of his or her physical or mental impairment(s) .... [W]hen any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" SSR 96-4p, 1996 WL 374187, at *1 n. 2; see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b). The ruling then reemphasized the importance of objective medical evidence to a determination of disability:

> [R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings .... In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.

SSR 96-4p, 1996 WL 374187, at *1-2.

Under these standards, Ukolov can only establish an impairment if the record includes signs--the results of "medically acceptable clinical diagnostic techniques," such as tests--as well as symptoms, i.e., Ukolov's representations regarding his impairment.

Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005).

The ALJ relied on the testimony of medical expert Dr. King, who found no objective evidence to support any functional limitations, to find that plaintiff did not suffer from any severe impairment. (Tr. at 30.) Dr. King had apparently reviewed the medical records and testified that various physicians did not find any limited range of motion. (Tr. at 52-59.) He concluded that plaintiff had no restrictions. (Tr. at 53-54.)

\\\\\

1    The medical records relied upon by Dr. King indicate little if any impairment.  Dr.

2    Steiner was the first physician of record to see plaintiff after she slipped and fell in a shopping

3    mall in 2000.  On May 11, 2000, this orthopedic surgeon referred to x-rays which showed an

4    "impacted fracture of the proximal humerus with an extension into the greater tuberosity."  (Tr.

5    at 177.)  He recommended exercises.  (Tr. at 177.)  On June 12, 2000, plaintiff was seen to

6    recheck her fracture.  She was hesitant to do the recommended exercises, but was doing

7    "reasonably well."  There were no treatment issues.  (Tr. at 178.)  On an August 21, 2000 visit,

8    plaintiff was on a home program of exercises, and had made progress in her range of motion.  Dr.

9    Steiner discharged her from care and advised her to maintain an exercise program.  She was told

10   to return as needed.  (Id. at 179.)

11   The next medical record in the file is dated March 12, 2002, when plaintiff was

12   examined by Dr. Compton at the request of the DSS.  She admitted that she had not seen a doctor

13   since 2000.  (Tr. at 137.)  Range of motion of the cervical, dorsal and lumbar spine was normal,

14   as were the shoulders, elbows, wrist fingers, thumbs, hips and knees.  (Id. at 138.)  Straight leg

15   raising was 90 degrees bilaterally.  (Id.)  Neurological exam of the upper extremities was normal.

16   (Id. at 139.)  Diagnosis was chronic neck and low back strain.  (Id.)  There was no objective

17   evidence of joint swelling or inflammation.  (Id. at 140.)  There were no gross deformities.  His

18   conclusion was that plaintiff had no impairment or physical limitations.  (Id.)

19   On October 23, 2002, x-rays of plaintiff's right shoulder indicated a "deformity of

20   the humeral head consistent with an old fracture.  There is no evidence for acute fracture or

21   dislocation.  The regional osseous structures appear normal."  The conclusion was "old

22   deformity.  No acute finding."  (Tr. at 154.)

23   Dr. Platt examined plaintiff on November 19 and December 5, 2002, and February

24   13, 2003.  (Tr. at 227.)  She showed decreased range of motion of the spine.  She also had

25   weakness in right shoulder abduction, and was unable to place her right hand behind her back.

26   (Tr. at 227.)  This orthopedic surgeon felt that her condition would not improve and

6

1   recommended analgesics, anti-inflammatories, corticosteroid injections and physical therapy.

2   (Id. at 228.)  He recommended further testing of the lumbosacral spine to rule out lumbar disc

3   protrusion and to evaluate for lumbar radiculopathy.  (Id.)  He did note that x-ray of the right hip

4   was normal.  (Id.)

5            Dr. Matin performed an examination at the request of the DSS on April 4, 2003.

6   Although plaintiff's dominant hand was her right hand, grip strength in that hand was 15-20-20

7   pounds, but there was no atrophy.  In the left hand, it was 40-40-45 pounds.  (Tr. at 215.)  Range

8   of motion of the neck and right shoulder was normal, and straight leg raising was negative

9   bilaterally.  (Id. at 216.)  Dr. Matin reviewed x-rays taken on the day of the exam which revealed

10  degenerative arthritic changes in the right shoulder but was otherwise unremarkable.  The old

11  healed fracture was apparent.  An x-ray of the spine showed minimal discogenic disease at T12

12  through L3 with anterior spurring.  There was also sclerosis and narrowing of the lower

13  apophyseal and S-I joints as well as moderate levoscoliosis.  (Id.; 218.)  Dr. Matin also evaluated

14  plaintiff's ability to do work related activities.  He found that plaintiff could occasionally lift and

15  carry 50 pounds, frequently lift and carry 20 pounds, and stand, walk, sit, push, and pull without

16  limitation. (Tr. at 219-20.)  She could frequently climb, balance, kneel, crouch, crawl, and stoop.

17  (Id. at 220.)  She could do the following on an unlimited basis: reach, handle, finger, feel.  (Id. at

18  221.)

19           Drs. Meek and Brodsky opined on March 27, 2002, that although plaintiff was

20  injured in May, 2000, she had not obtained medical care since that time.  They noted she had not

21  stopped working due to her disability.  There was full range of motion in the cervical and lumbar

22  spine, and both upper extremities and lower extremities.  Straight leg raising was negative.

23  Motor strength was normal and there were no gross deformities.  Plaintiff was found to be not

24  credible because there was no evidence of residual problems on exam.  (Tr. at 141.)  It was

25  concluded that plaintiff had no physical limitations.  (Id.)

26  \\\\\

On August 21, 2002, plaintiff was reassessed by Dr. Brodsky who found no change to the prior assessment and concluded that plaintiff's condition was not severe.  (Tr. at 142.)

It is apparent from the record that plaintiff received no treatment since her fracture in 2000.  She was undergoing no treatment, medication, or therapy other than for a short time when she received acupressure from May to August, 2000.  (Tr. at 171-74.)  The fact that plaintiff could not afford medical care does not cause the burden to fall on the Commissioner to further develop the record.  The record has been sufficiently developed to make a determination.  The Commissioner's citation to Social Security Ruling 82-59[3] is inapposite as this ruling "only

---

[3] SSR 82-59 provides in relevant part (emphasis added):

Individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, <u>unless there is a justifiable cause for the failure to follow such treatment</u> ...

The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20 C.F.R. § 404.1530 under Title II) similarly provides:

(b) When you do not follow prescribed treatment.  If you do not follow the prescribed treatment without a good reason, we will not find you disabled ...

Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for declining to following prescribed treatment, none of which are present here.

20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for declining to following prescribed treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
(4) The treatment because of the enormity (e.g. open heart surgery), unusual nature (e.g. organ transplant), or other reason is very risky for you; or
(5) The treatment involves amputation of an extremity, or a major part of an extremity.

appl[ies] to claimants who would otherwise be disabled within the meaning of the Act." <u>Roberts</u> <u>v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995).  The ALJ made a specific finding that plaintiff was not disabled without regard to her failure to seek treatment.[4]

Plaintiff cites <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir. 2001), for the proposition that where an ALJ errs in finding an impairment is not severe at step two, the case must be remanded for the requisite step three analysis.  First of all, <u>Edlund</u> cited Social Security Rulings 96-3p and 96-7p to require that even if plaintiff can demonstrate a medically determinable impairment, he must also prove that this impairment affects his ability to perform basic work activities.  <u>Id.</u> at 1159-60.

The record indicates that, but for the de minimus standard provided for at step two, plaintiff could not proceed further in the sequential analysis.  Only because Dr. Matin found reduced grip strength in plaintiff's right hand, degenerative arthritic changes in the shoulder, minimal discogenic disease, anterior spurring, sclerosis and moderate levoscoliosis in the spine, and Dr. Platt found decreased range of motion and weakness in right shoulder abduction, does the court find that plaintiff has shown a medically determinable impairment in her right shoulder and back—but barely.

---

Additional acceptable reasons for declining to following prescribed treatment set forth in SSR 82-59 are:

> (1) Fear of surgery;
> (2) Inability to pay for prescribed treatment;
> (3) A medical source has advised against the treatment.

[4]  The ALJ did discuss her failure to seek treatment, but only in regard to her credibility finding.  The ALJ stated,

> I find that the claimant exaggerates her physical complaints to
> enhance her financial resources.  She admitted that she is not
> receiving any regular medical treatment.  In the absence of
> objective medical findings supporting the claimant's allegations, I
> find that her testimony about the nature and extent of her
> functional limitations is not credible.

(Tr. at 31.)

Even though Dr. Matin was the only physician who both found a condition which could be labeled an impairment and also evaluated plaintiff's functional capacity, he nonetheless concluded that plaintiff's only functional limitation was being limited to carrying fifty pounds occasionally.  She was not limited in any other respect, and could work at a medium work level.[5]  See 20 CFR § 416.967(c).  Therefore, plaintiff has not shown that her impairment affects her ability to do basic work activities, and therefore her impairment is not severe.

Plaintiff complains that the medical expert, Dr. King, should not be given much weight because he did not have the benefit of the exams conducted by Dr. Platt on February 3, 2003, and Dr. Matin on April 4, 2003.  This post-hearing exam by Dr. Matin resulted in the conclusion that plaintiff could do medium work, however, and would not have changed the opinion of Dr. King.  Although Dr. Platt did not assess plaintiff's residual functional capacity, his most recent medical findings were similar to those of Dr. Matin and not significantly different from the previous findings of record.

Assuming arguendo that plaintiff has a severe impairment, the ALJ, although not finding a severe impairment, proceeded to step three in any event to complete the analysis, which is the remedy provided by Edlund.  (Tr. at 30.)[6]

\\\\\

\\\\\

\\\\\

---

[5]  The ALJ gave plaintiff every benefit of the doubt and found she could only do light work.

[6]  Although plaintiff cannot at her present age, 67, and 64 plus at the time the ALJ issued her decision, perform all work activities that she or anyone else younger could perform at 20 years old, the court will not find that general, expected reduction in one's physical capacities as one ages constitutes a more than minimal effect on one's ability to perform work.  If the case were otherwise, the Step 2 screening device becomes totally inoperative for persons approaching retirement age, because it is safe to say that any 60 year old cannot perform basic, physical work activities as well as he or she could at 20.  An adjudicator in a case such as this must take into account in some way this indisputable proposition.

1    B.  <u>Whether the ALJ Erred in Finding Plaintiff Capable of Performing Past</u>

2    <u>Relevant Work</u>

3    Not having found a severe impairment, the court could conclude the analysis.

4    However, in an abundance of caution, the court will examine plaintiff's further contention.

5    Plaintiff next contends that the ALJ erred in finding that her past work qualified as

6    substantial gainful activity in the past fifteen years.  "'Substantial gainful activity' is: ... work

7    activity that 'involves doing significant physical or mental activities' on a full or part-time basis,

8    and is the 'kind of work usually done for pay or profit, whether or not a profit is realized.'"  20

9    C.F.R. §§ 416.972(a) & (b).  <u>Byington v. Chater</u>, 76 F.3d 246, 248 (9th Cir. 1995) citing <u>Katz v.</u>

10   <u>Sec. HHS</u>, 972 F.2d 290, 292 (9th Cir. 1990).

> The concept of substantial gainful activity involves the amount of
> compensation and the substantiality and gainfulness of the activity
> itself.  20 C.F.R. § 404.1532(b); <u>Chicager v. Califano</u>, 574 F.2d
> 161, 163 (3d Cir.1978).  The mere existence of earnings over the
> statutory minimum is not dispositive.  <u>Chicager</u>, 574 F.2d at 163.
> However, there is a presumption of substantial gainful
> employment if the applicant earns over the amount specified in the
> guidelines.  20 C.F.R. §§ 404.1574(b)(2), 404.1575(b)(2);
> <u>Josefowicz v. Heckler</u>, 811 F.2d 1352, 1356 (10th Cir.1987).  The
> claimant may rebut a presumption based on earnings with evidence
> of his inability to be self-employed or to perform the job well,
> without special assistance, or for only brief periods of time.
> <u>Anderson v. Heckler</u>, 726 F.2d 455, 456 (8th Cir.1984).

19   <u>Keyes v. Sullivan</u>, 894 F.2d 1053, 1056 (9th Cir. 1990).

20   In this case, the ALJ found that plaintiff had past relevant work as an outside

21   salesperson, waitress, and general clerk.  (Tr. at 31.)  Relying upon the vocational expert's

22   testimony, the ALJ concluded that plaintiff could perform her past work as either outside

23   salesperson or general clerk.[7]  (<u>Id.</u>)  Plaintiff disagrees that these jobs constitute substantial

25   [7] The expert actually testified that if plaintiff were categorized at light work, she could do
     all three past jobs: waitress, outside sales, or general clerk.  If she were restricted by a sit/stand
26   option, she could only do the outside sales job.  (Tr. at 68.)

1   gainful activity because the only work performed by her in the last fifteen years was as waitress

2   from 1959 to 1992.  Second, she contends that her earnings were not enough to qualify.  Third,

3   plaintiff argues that the ALJ did not investigate her work history sufficiently to discover that she

4   did not work from 1973 to 1990, and did not investigate the dates she did paperwork and filing or

5   outside sales, and the hours and remunerative value of these activities.

6           Plaintiff cannot now refute her testimony that she held other jobs within the last

7   fifteen years.  Plaintiff's testimony is therefore the only evidence on the point, and it is entitled to

8   be believed.  Albalos v. Sullivan, 907 F.2d 871, 873-874 (9th Cir. 1990).  Although her earnings

9   records indicate low earnings for the years 1959 through 1967, and almost no earnings from 1987

10  to 2002, and plaintiff listed only the waitress position as past work (Tr. at 112-114, 117), she

11  testified that she worked for ten years for her boyfriend in his engineering office doing

12  paperwork and filing in the nature of secretarial work.  (Tr. at 65.)  This job did not pay a salary

13  but plaintiff's boyfriend supported her in exchange for the work.  (Id. at 39, 71.)  She did this

14  work for ten years, until they broke up, but could not recall dates.  (Id. at 66.)  She did relate that

15  they were together twenty years, broke up and were together again for three more years during

16  the time of her accident which was in May, 2000.  (Id.)  They broke up the last time in February,

17  2002.  (Id. at 67.)

18          During the time they were broken up, plaintiff worked in advertising sales.  (Id. at

19  66.)  She stated she did not have enough income to file taxes or report earnings; however, she

20  testified that she earned between $500 and $1,000 per month in this job.  (Id.)  Thus, the dates

21  plaintiff worked at each job are not clear, based on her memory; however, it is clear that she

22  worked these jobs at least in part within fifteen years prior to the ALJ's determination,[8] based on

23  her representation that her relationship with her boyfriend was in the last twenty years and she

24  worked both these jobs during that time period.

25  _____

26          [8]  The fifteen year period ends at the time the ALJ adjudicates the claim.  20 CFR §
     404.1565(a).

It was not incumbent on the ALJ to determine the exact dates of the general clerk and outside sales jobs, as she tried to examine plaintiff but plaintiff's memory would not permit more detail than what was given at the hearing.  In fact, plaintiff conceded: "I have trouble remembering dates, years." (Id. at 66.)  The ALJ was so perplexed by the gaps in information that when it came time for the vocational expert to testify, the ALJ stated, "Mr. Hartley, if you could make something out of this work history, you're really a vocational expert." (Id. at 67-68.)

Furthermore, because plaintiff did not report any income, there are no tax records obtainable by the ALJ.  Plaintiff has the burden at step four of the analysis to show that she does not have the capacity to engage in past work, and she did not meet this burden by providing evidence to the ALJ other than her own admittedly limited testimony.  20 CFR §§ 404.1520(e), 416.920(e).  Even if the plaintiff were to meet her burden at step four and show a presumption of low earnings, requiring the ALJ to show substantial gainful activity through factors aside from earnings, such as nature of the claimant's work, amount of time spent at work, whether the work is performed under special conditions, the ALJ would not be able to comply because there are no tax records or other evidence of plaintiff's job as general clerk for her boyfriend.  See Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001).  Plaintiff should not be rewarded for not paying taxes, not having work records, and not having a memory of this work experience.

In regard to the amount of compensation, plaintiff's testimony that she earned between $500 and $1,000.00 per month indicates she is above the dollar limit that will create a presumption (more than $300.00/month for years 1980 through 1989, more than $500.00/month for years 1990 to June, 1999, and more than $700.00/month for years July, 1999 through December, 2000, 20 C.F.R. §§ 404.1574(b)(2) & 416.974(b)).

Plaintiff did not attempt to rebut this presumption with evidence that she did not perform the job well, that she performed it under special conditions, such as with special supervision or assistance, or for only brief periods of time.

\\\\\

13

1    In regard to her job as general clerk where she did not earn a salary but was

2    supported by her boyfriend in exchange, courts have been able to assign a monetary value to

3    these types of jobs.  In <u>Keyes</u>, the plaintiff received room and board as well as other expenses

4    which were valued at more than the statutory amount.  894 F.2d at 1056.  Here, the ALJ did not

5    value plaintiff's benefit of being supported by her boyfriend, but it is undisputed that she

6    received full support from him, including room and board.  (Tr. at 39, 71.)  There is no evidence

7    of the dollar value of this benefit; however, any failure by the ALJ to establish the amount was

8    harmless.  <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1121 (9th Cir. 1990).  "Earnings can be a

9    presumptive, but not conclusive, sign of whether a job is substantial gainful activity."  <u>Lewis v.</u>

10   <u>Apfel</u>, 236 F.3d 503, 515 (9th Cir. 2001).

11   Moreover, there are other ways to establish substantial gainful activity.

12   Substantial work activity involves doing significant physical or mental activity, even if it is done

13   on a part time basis.  20 CFR § 404.1572(a); <u>Keyes</u>, 894 F.2d at 1056.  Furthermore, "work

14   activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is

15   realized."  20 CFR § 404.1572(b); <u>Keyes</u>, 894 F.2d at 1056.

16   Also significant here is that the ALJ's findings referred to the vocational expert's

17   opinion as allowing plaintiff to do only her past work as outside salesperson or general clerk;

18   however, the ALJ neglected to include plaintiff's past work as waitress which the expert testified

19   she could do.  This job raises no issues of substantial gainful activity because plaintiff does not

20   dispute the years, the salary or the nature of this work.  It is unknown why the ALJ failed to

21   include this job in her findings; however, the VE's testimony is clear in permitting plaintiff to do

22   this past work.  Therefore, any omission by the ALJ in regard to the other past jobs was harmless.

23   An error which has no effect on the ultimate decision is harmless.  <u>Curry v. Sullivan</u>, 925 F.2d

24   1127, 1121 (9th Cir. 1990).

25   \\\\\

26   \\\\\

14

CONCLUSION

In sum, the court finds the ALJ's assessment is fully supported by substantial evidence in the record or based on the proper legal standards.  Accordingly, plaintiff's Motion for Remand or Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 12/9/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Marlow1778.ss.wpd